223 So.2d 423 (1969)
Olan Ray STELL et al., Plaintiffs and Appellees,
v.
L. V. CAYLOR, d/b/a Caylor & Associates, Defendant and Appellant.
No. 2679.
Court of Appeal of Louisiana, Third Circuit.
May 22, 1969.
Rehearing Denied June 18, 1969.
*424 Gus. A. Voltz, Jr., Alexandria, for defendant-appellant.
Ford & Nugent, by William M. Ford, Alexandria, for plaintiffs-appellees.
Before TATE, SAVOY and CULPEPPER, JJ.
*425 CULPEPPER, Judge.
The plaintiffs, husband and wife, seek penalties and attorney's fees for defendant's failure to pay amounts due at the termination of their employment, under LSA-R.S. 23:631 et seq. From an adverse judgment, the defendant employer appealed. Plaintiffs answered the appeal, seeking an increase in the award.
The issues are: (1) Is the $100 "deposit", made by each plaintiff under the employment contracts, an amount due within the contemplation of LSA-R.S. 23:631-632? (2) Are the provisions of the contract of employment, with reference to the withholding of the $100 deposit from the first six weekly wage payments, in violation of LSA-R.S. 23:634-636 pertaining to the forfeiture of wages and deduction of fines from wages?
The facts show that the defendant, Caylor & Associates, is in the business of making confidential investigations of the services rendered by employees of major transportation companies. Defendant employed plaintiffs to ride buses and investigate and report on certain designated activities.
The employment contracts entered into between defendant and plaintiffs are dated January 9, 1968 and contain the following pertinent provisions:
"1. The basic rate for this position is $1.60 per hour for the first 40 hours worked in any calendar week with time and one-half for overtime worked in any such calender week. For each day worked I am to receive an allowance of $5.00 to apply toward room rent. If I do not complete sixty (60) days of work nor complete any contract that I have started, this $5.00 per day is not applicable, and, if I have been paid that allowance, I will refund it to the Company if I do not complete the contract that I start, or if I do not complete the initial 60 days of work.
"2. Payment of earnings is to be based entirely upon time slips turned in to the Company by me, each authenticated and approved by my superior officer. A deposit of one hundred dollars ($100.00) will be made to the Company against equipment and monies issued. I agree that this deposit will be made by me to the Company during my first six (6) weeks of employment, a portion thereof made weekly. The Company reserves the right to check all books, pay slips, and reports, at the termination of my employment before the $100.00 deposit is returnable to me. Payment of earnings will be made weekly."
Pursuant to these contracts, plaintiffs started working and by March 2, 1968 weekly deductions totaling $100 had been made from the wages of each plaintiff for the deposits.
On April 14, 1968, while working on an investigation in South Carolina, plaintiffs submitted conditional resignations and asked for leaves of absence. On May 1, 1968, plaintiffs notified defendant that for personal reasons they would not return to work. Shortly thereafter, plaintiffs left South Carolina and returned to Alexandria, Louisiana, where they requested and received payment of all wages due for their last period of employment. But defendant refused to refund at that time the two deposits of $100. The reason given is that the reports of plaintiffs' last investigation had not yet been checked to determine whether they would be needed to testify in court.
On May 16, 1968, plaintiffs' attorney made written demand on defendant to return the deposits. On defendant's failure to pay the deposits, this suit was filed on May 29, 1968. On the date of the trial, October 29, 1968, the deposits, totaling $200, were paid to plaintiff's attorney with the stipulation that credit therefor would be given against any judgment rendered against defendant in these proceedings.
The first issue is whether the deposit is an "amount due" within the contemplation *426 of LSA-R.S. 23:631-632 which read as follows:
"Sec. 631. Discharge or resignation of employees; payment within 24 hours after termination of employment
"It shall be the duty of every person, employing laborers or other employees of any kind whatever when discharging any laborer or other employee, or when any such laborer or employee has resigned, within twenty-four hours after such discharge or resignation, to pay the laborer or employee the amount due under the terms of employment whether the equipment is by the day, week or month, upon demand being made upon the employer by the discharged or resigned laborer or employee at the place where the employee or laborer is usually paid."
"Sec. 632. Liability of employer for failure to pay; attorney's fees
"Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the laborer or other employee for his full wages from the time the demand for payment by the discharged or resigned laborer or employee was made, until the employer shall pay or tender payment of the amount due to such laborer or other employee. Reasonable attorneys' fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a just suit be filed by the laborer or employee after twenty-four hours shall have elapsed from time of making the first demand following discharge or resignation."
Plaintiffs contend these statutory provisions are not limited to wages per se. They point to the language in LSA-R.S. 23:631, quoted above, requiring the employer to pay "the amount due under the terms of employment" and argue that this language includes the deposits in question. We are unable to agree with this construction of the statute.
Since the statute is coercive and penal in nature, it must be strictly construed, must not be extended beyond its clear unambiguous language, and must yield to equitable defenses. Becker v. Choate, 204 So.2d 680 (3rd Cir. 1967) and the authorities cited therein; Hays v. Louisiana Wildlife & Fisheries Commission, 165 So. 2d 556 (1st Cir. 1964).
Strictly construed, the statute cannot be extended to cover the deposits at issue. LSA-R.S. 23:631 requires the employer "to pay the laborer or employee the amount due under the terms of employment whether the employment is by the day, week or month." (Emphasis supplied.) Usually, the amount due the employee under a contract of employment is for wages. The term "wages" has been interpreted to include all types of remuneration for personal services, such as salaries, commissions, bonuses, expense allowances for which the employee does not have to account, paid vacations, etc. Sewell v. Sharp, 102 So.2d 259 (2nd Cir. 1958); Black's Law Dictionary, 4th Ed., "Wages". But, the obligation to return a deposit or a bond posted by the employee is not a remuneration for personal services.
Furthermore, the inclusion in the statute of the words "whether the employment is by the day, week or month" seems clearly to signify that only amounts due as wages are contemplated. Otherwise these words would be superfluous. If the statute is intended to cover all amounts due by the employer to the employee, regardless of whether they are wages, there is no need for the statute to specify the pay periods of wages.
Also, the penalty provision of LSA-R.S. 23:632 refers only to "wages". It makes no mention of any other kinds of debts which might be owed by the employer to the employee.
Thus, construing the words of the statute in "their most usual signification" and in their "general and popular use", *427 LSA-C.C. Article 14, the statute applies only to wages.
In addition, the "reason and spirit", LSA-C.C. Article 18, of the statute in question is to compel an employer to pay promptly the earned wages of an employee after his discharge or resignation. Bannon v. Techeland Oil Corporation, 205 La. 689, 17 So.2d 921 (1944); Bielstein v. Hawkins, La.App., 50 So.2d 523; Sirmon v. Cron & Gracey Drilling Corporation, 44 F. Supp. 29. The return of a deposit is beyond this purpose.
The parties themselves did not construe the "deposit" as wages. In their testimony, plaintiffs referred to the deposit as the "bond". They distinguished this from wages due on termination of their employment.
Counsel for the plaintiffs has cited no authority supporting the statutory construction he urges. Although we find no case precisely in point, the following are persuasive in that they show the extent to which the courts have gone in strictly construing the statute and allowing equitable defenses. In Mitchell v. First National Life Insurance Company of Louisiana, 236 La. 696, 109 So.2d 61 (1959) the employer withheld $20 from the discharged employee's wages to cover a shortage in the "petty cash box". At the trial it developed that the plaintiff was not the only employee who had access to the cash box. Nevertheless, the court held the employer was not motivated by bad faith, was not unreasonable nor arbitrary and hence penalties were denied.
In Yancey v. Dixon Ice Cream Company, La.App., 190 So. 837, (7th Cir. 1939) the plaintiff was a route foreman for a milk company. He agreed to pay all shortages that might occur in the accounts of the drivers. On the termination of plaintiff's employment, the employer refused to pay his wages until the drivers' shortages were accounted for. The court held that under the terms of the contract of employment defendant was justified in refusing to pay plaintiff's wages.
In Williamson v. National Beneficial Life Insurance Company, 16 La.App. 451, 133 So. 515 (2nd Cir. 1931) the plaintiff had authorized his employer to withhold $10 per month from his wages for the purchase of shares of stock. On the termination of plaintiff's employment, he was short in several of his accounts. The employer withheld part of the wages, as well as the $10 which had been deducted for the stock, until the accounts could be settled. The court upheld these equitable defenses to a claim for penalties.
Having concluded that the penalty statute does not apply to these deposits, we do not reach the question of whether the deposits had become due before the date they were refunded to plaintiffs.[1]
Plaintiffs also contend the provisions of the contract of employment are void and in violation of LSA-R.S. 23:634-636.[2] The first contention in this regard *428 is that the contract requires plaintiffs to forfeit their wages on their discharge or resignation. The argument here is that the deposit constituted wages, which could be withheld. For the reasons stated above, we have concluded that the deposit did not constitute wages.
Plaintiffs next argue that the deposit was in the nature of a "fine", in contravention of LSA-R.S. 23:635. This argument has no merit. The word "fine" denotes a pecuniary penalty or punishment imposed for the violation of some law, rule or regulation. Hanks v. Shreveport Yellow Cabs, 187 So. 817 (2nd Cir. 1939); State v. King, 167 La. 350, 119 So. 252. The deposit in the present case did not constitute a fine. It was simply a sum deposited by the employees to insure the return of any equipment or monies issued and the reservation to defendant of the right to check all books, pay slips and reports. No statute or jurisprudence has been called to our attention prohibiting such contractual provisions.
A further answer to plaintiffs' contentions, as to the illegality of the contractual provisions regarding the deposits, is that in any event the penalty for violation of these provisions is not the payment of full wages for 90 days, as set forth in LSA-R.S. 23:632, but instead is the payment of a fine or imprisonment, as provided by LSA-R.S. 23:636. In the present proceedings, the applicable penalties are not at issue.
For the reasons assigned, the judgment appealed is reversed and set aside. It is now ordered, adjudged and decreed that there be judgment herein in favor of defendant and against the plaintiffs, dismissing their demands at their costs. All costs of this appeal are assessed against the plaintiffs appellees.
Reversed and rendered.

On Application for Rehearing.
En Banc. Rehearing denied.
NOTES
[1] One of the issues at the trial was whether the defendant had the right to withhold the deposits until plaintiffs' reports of their last investigation had been checked and it had been determined that their presence would not be needed in court for any litigation arising out of the investigation. This involved both a factual question and a construction of the employment contract.
[2] Sec. 634. Contract forfeiting wages on discharge unlawful

No person, acting either for himself or as agent or otherwise, shall require any of his employees to sign contracts by which the employees shall forfeit their wages if discharged before the contract is completed or if the employees resign their employment before the contract is completed; but in all such cases the employess shall be entitled to the wages actually earned up to the time of their discharge or resignation.
Sec. 635. Assessment of fines against employees unlawful; exceptions
No person, acting either for himself or as agent or otherwise, shall assess any fines against his employees or deduct any sum as fines from their wages. This section shall not apply in cases where the employees wilfully or negligently damage goods or works, or in cases where the employees wilfully or negligently damage or break the property of the employer, but in such cases the fines shall not exceed the actual damage done.
Sec. 636. Penalty for violations
Whoever violates the provisions of R.S. 23:634 or R.S. 23:635, shall be fined not less than twenty-five dollars nor more than one hundred dollars, or imprisoned for not less than thirty days nor more than three months.